IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICENTE ALVARADO,
YVETTE ALVARADO,
STEVE FLORES, PRISCILLA
FLORES, TOMAS GUTIERREZ,
and BEVERLY GUTTIEREZ,

    Plaintiffs,

v.                                                         Civil No. 05-750 WJ/LAM

KOB-TV, L.L.C. (Channel 4 News);
and CITY OF ALBUQUERQUE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    THIS MATTER comes before the Court on a Motion to Dismiss filed June 13, 2005 by Defendant KOB-TV Channel 4 News ("KOB-TV") **(Doc. 6)**.  This case was removed from the Second Judicial District Court, County of Bernalillo; however, the Motion to Dismiss was filed by KOB-TV while this case was pending in state court.  Defendant City of Albuquerque has filed its Answer to Plaintiffs' First Amended Complaint but is not a party to the Motion to Dismiss.

    Following oral argument on the motion, the Court granted Plaintiffs' counsel's request as to submit supplemental authority supporting their positions as a result of defense counsel having submitted additional case authority at the hearing that was not cited in Defendants' pleadings.  The Court has considered these submissions as well as the parties' briefs, the applicable law and oral arguments of counsel, and finds that KOB-TV's motion is well-taken and will be granted.

**Background**

At the time relevant to the complaint, Plaintiffs Vicente Alvarado, Steve Flores and Tomas Gutierrez worked as undercover narcotics officers with the Albuquerque Police Department ("APD").[1] Plaintiffs allege violations of federal civil rights and state tort law against Defendants for the disclosure and dissemination of information which Plaintiffs claim have resulted in injury to themselves and their families.

This case traces its factual beginning from a phone call made by a woman to the APD.[2] On or about May 3, 2004, Syra Roman contacted Detective Lance Fails of the APD by phone and informed him about an alleged sexual assault committed against her by "undercover" police officers. Ms. Roman did not show up for the scheduled follow-up appointment with Detective Fails. Instead, APD Detective Rich Lewis "apprehended" her and brought her to Detective Fails for questioning. Detective Fails was told by Detective Lewis that Ms. Roman had an outstanding warrant for her arrest and Ms. Roman was told that if she gave a statement to the officers about an alleged sexual assault upon her, she would not be booked on the outstanding warrant. Ms. Roman provided a statement to officers at that time indicating that she was sexually assaulted by two "undercover" police officers, and released afterward. The First Amended Complaint states that Ms. Roman's description of her alleged assailants did not match the features of Plaintiffs Alvarado or Flores. Ms. Roman later recanted her allegations.

According to the First Amended Complaint, around the end of May, a friend of Ms.

---

[1] Plaintiffs' spouses are named as parties in this lawsuit, but for purposes of this Opinion, "Plaintiffs" refers to the officers unless otherwise noted.

[2] The facts are laid out according to the allegations in the First Amended Complaint.

Roman's contacted Detective Fails and told him that he thought that Plaintiffs were the ones who had assaulted Ms. Roman because he saw Plaintiffs' names on a search warrant that was executed near one of Plaintiffs' friends' homes in Albuquerque.  When Detective Fails showed Ms. Roman photo arrays containing photographs of Plaintiffs, Ms. Roman did not identify Plaintiffs as her alleged assailants.   In the beginning of June, 2004, Captain Jan Moser informed Plaintiffs that they had to report to Deputy Chief Ed Sauer's office to respond to some "allegations" that had come up.  Both Captain Moser and Chief Sauer refused to disclose the nature of these allegations to Plaintiffs and they were escorted to the FBI Field Office in Albuquerque and questioned at length by various officers and agents.  Plaintiffs were not informed of the nature of the investigation until near the end of the interrogations.  Plaintiff Gutierrez was never informed of the nature of the investigation, and requested that a lawyer be provided during his interview, but no lawyer was ever provided to him.  First Am. Compl. ¶¶ 33 & 35.  Plaintiffs state that they did not sexually assault Ms. Roman, and during the interviews refused to admit that they had done anything wrong.

At the end of the interviews, Plaintiffs were forced to provide DNA samples to police, were presented with letters placing them on administrative leave, and were required to turn in their guns and badges.  On or about June 2, 2004, search warrants were issued authorizing searches of the homes of Plaintiffs Alvarado and Flores.  The state court judge entered an order sealing the Plaintiffs' names and residential addresses contained in the warrants because release of that information would interfere with the investigation and endanger Plaintiffs' safety or lives.  The sealing order was to remain in effect until further ruling by the state court.  Plaintiffs allege that someone within APD leaked Plaintiffs' names and addresses to KOB-TV, as well as the

nature of the investigation and Ms. Roman's allegations.  A KOB-TV news crew went to Plaintiffs' homes and filmed Plaintiffs and their homes.

The First Amended Complaint alleges that KOB-TV ran newscasts at 6:00 p.m. and 10:00 p.m. newscasts which disclosed that Plaintiffs were accused of sexual assault, broadcasted Plaintiffs' names, pictures, affiliation with APD, and ran footage of their homes.  The story was run for approximately four days afterward, even after KOB-TV was informed after the initial newscast that Plaintiffs were undercover officers.

The First Amended Complaint alleges various state tort claims as well as violations of federal civil rights: Count I, Invasion of Privacy; Count II, Intentional Infliction of Emotional Distress; Count III, Defamation; Count IV, False Imprisonment; Count V, Violation of Constitutionally Implied Right to Privacy under 42 U.S.C. § 1983 and 5 U.S.C. § 552a(b).[3] Plaintiffs assert Counts I and II against KOB, and Counts III, IV and V against the City of Albuquerque.  Thus, KOB-TV's motion and this opinion address only the state tort claims of Invasion of Privacy and Intentional Infliction of Emotional Distress, Counts I and II of the First Amended Complaint.

Legal Standard

Dismissal of a complaint pursuant to Rule 12(b)(6) will be upheld only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41,  5-46 (1957). "The issue in reviewing the

---

[3] Sec. 552a(b)["Conditions of disclosure"] states in part:  "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . (listing exceptions).

sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims." Ruiz v. McConnell, 299 F.3d 1173, 1181 (10th Cir. 2002).  In actions for alleged libel or defamation, motions to dismiss for failure to state a claim under Rule 12(b)(6) and summary judgment have been recognized as appropriate modes of obtaining dismissal of suits, where the published material is held as a matter of law to be privileged or constitutionally protected.  Marchiondo v. New Mexico State Tribune Co., 98 N.M. 282, 295 (N.M.App. 1981), overruled on other grds., 98 N.M. 384 (1982).

     A motion to dismiss pursuant to Rule 12(b)(6) is treated as a motion for summary judgment when premised on materials outside the pleadings, and the opposing party is afforded the same notice and opportunity to respond as provided in Rule 56.  Hall v. Bellmon, 935 F.2d 1106, 1110-11 (10th Cir. 1991), cited in Lucero v. Gunter, 52 F.3d 874, 877 (10th Cir. 1995).  On the other hand, materials that are "referred to" in a plaintiff's complaint and which are central to the plaintiff's claim may be considered part of the pleadings for the purpose of a Rule 12(b) motion.  See Greenberg v. Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir.1999) (referring to collective bargaining agreement.  See, Pension Ben. Guar. Corp. v. White Consol.Pension Ben. Guar. Corp. v. White Consol. Industries, Inc. 998 F.2d 1192 (3rd Cir. 1993)  (holding that  court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document).

     Both parties have attached exhibits to their pleadings, e.g., KOB-TV has submitted a copy of the broadcast transcript, and Plaintiffs have attached copies of the sealing order.  While the Court may refer to these exhibits in the discussion ahead, the Court need not determine whether KOB-TV's  motion should be converted to a summary judgment motion since the Court's

decision on the issues will not rely on any of those documents.  See Lybrook v. The Members of the Farmington Municipal Schools Board of Education, 232 F.3d 1334, 1341-42 (10th Cir. 2000).

**Discussion**

KOB-TV's motion is based on general defenses of the First Amendment, which protects media coverage on matters of public concern absent a showing of malice and reckless disregard of the truth.  New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964).  KOB-TV contends that coverage of criminal activity of police officers and the surrounding investigation and details are worthy of news coverage and are therefore constitutionally protected from claims such as those brought by Plaintiffs.[4]  KOB-TV's position is that the protection of free speech under the First Amendment also applies to the publication of accurate information about police officers who are alleged to be involved in criminal activity in general.

For Plaintiffs, the "critical distinction" between the cases relied on by KOB-TV and the instant situation is the state court order sealing the names, identities and addresses of three undercover officers.   Plaintiffs contend that the First Amendment defense does not apply where the information that is published was not lawfully obtained.  See, Smith v. Daily Mail Pub. Co., 443 U.S. 97 (1979) (state may not punish publication of information that is lawfully obtained), cited in Florida Star v. B.J.F., 491 U.S. 524 (1989) (First Amendment protects publication of

---

[4] KOB-TV also contends that the common law "fair report" privilege applies.  Under that privilege, the media is protected from liability if the information reported comes from a government statement or proceeding, so long as the report accurately reflects that statement. Stover v. Journal Pub. Co.,105 N.M. 291 (N.M.App.,1985) (citing Restatement (Second) of Torts § 611 comment b (1977).  Based on the nature of the surrounding circumstances of this case – i.e., the undercover status of the police officers combined with the order sealing their identities – I am not convinced that the source of the reported material was an "official or public proceeding," Stover, 105 N.M. at 295, and therefore not persuaded that the privilege is dispositive of the issue before the Court.

information which a newspaper has lawfully obtained).  The basis for the contention that KOB-TV's access to the information was not lawfully obtained is the fact that a sealing order was in place at the time of the broadcasts.  Plaintiffs argue that if Defendant was aware of the order, then it should be held liable for tort injuries which result from the publication.  For this reason, Plaintiffs urge the Court to deny the motion to dismiss and allow discovery to proceed, in order to determine whether KOB was aware of the order.  Defendant would then have the opportunity to file a motion for summary judgment if discovery bears out its First Amendment defenses.

Defendant, however, argues that it did not violate the sealing order because the order did not apply to the media. Defendant further contends that Plaintiffs' reading of the order as a gag order with universal application would be an unconstitutional "prior restraint" on entities such as KOB-TV.  It is this latter argument which the Court finds necessary to address as a threshold legal – and dispositive -- issue.  See, e.g., Proctor & Gamble Co. v. Bankers Trust Co et al., 78 F.3d 219 (6th Cir. 1996) (finding that district court's injunction against publisher was invalid where publisher had gained access to sealed discovery documents and published them because district court had not first analyzed or determined whether publisher had a first amendment right to disseminate the information in its possession).

KOB-TV's position is that it was not a party to the sealing order, nor was it served with a copy of the order.  Plaintiffs offer no evidence or legal authority other than a copy of the state court order to show that it would have applied to KOB-TV.  However, if application of the order would have imposed an unconstitutional prior restraint on KOB-TV, then KOB-TV's awareness of the order is irrelevant, since KOB-TV would not have been bound by its requirements.

**I.      Prior Restraint**

The United States Supreme Court views prior restraints directed to the press with a heavy presumption against their constitutionality. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 570 (1976); New York Times Co. v. United States, 403 U.S. 713, 714 (1971). This is not to say that the protection afforded by the First Amendment even as to prior restraint is "absolutely unlimited." Nebraska Press, 427 U.S. at 590. However, the few exceptional circumstances involve situations where the speech involved "is not encompassed within the meaning of the First Amendment." Id. (citations omitted); see, e.g., Journal Pub. Co. v. Mechem, 801 F.2d 1233, 1236-37 (10th Cir. 1986) (finding that court may impose a prior restraint on the gathering of news about one of its trials only if the restraint is necessitated by a compelling governmental interest and holding that court could not issue a sweeping restraint forbidding all contact between the press and former jurors without a compelling reason); U.S. v. Brown, 218 F.3d 415, 424 (5th Cir. 2000) (prior restraint directed at the press will be upheld only if the government can establish that the activity restrained poses either a "clear and present danger or a serious and imminent threat to a protected competing interest").[5]

Plaintiffs allege that someone within APD provided KOB-TV with Plaintiffs' names and addresses, and that KOB-TV's broadcasts relayed Plaintiffs' names and pictures, ran footage of their homes, and gave out information about the nature of the investigation. First Amended Compl., ¶¶ 48, 50, 55. Plaintiffs do not allege that their actual addresses were disclosed, or that

---

[5] This standard is more demanding than that applied to the speech of lawyers representing clients in pending cases. See, Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991) (speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press in Nebraska Press), cited in Brown, 218 F.3d at 426.

identities or pictures of individuals in their families were revealed.[6] Plaintiffs allege that KOB-TV's revealing of their names and identities put their lives and those of their families' in danger. First Amended Compl., ¶ 46.

Based on these circumstances, the Court agrees with KOB-TV that application of the sealing order to KOB-TV would have constituted an impermissible prior restraint on the news station, considering the strong presumption against the use of gag orders on the media. See, Nebraska, 427 U.S. at 571 ("barriers to prior restraint remain high and the presumption against its use continues intact"). Since KOB-TV could not be bound by the sealing order under the prohibition against prior restraint, and since Plaintiffs allege that the leak came from someone within APD (First Amended Compl., § 48), KOB-TV did not unlawfully obtain the information it broadcast. Therefore, KOB-TV's broadcast of the allegedly objectionable information was protected under the First Amendment. Cmp., The News-Journal Corp. v. Foxman, 939 F.2d 1499 (11th Cir. 1991) (while newspaper would not suffer irreparable injury as a result of restrictive order entered by state trial judge, it could not be prevented from publishing the information that became available because the issue would become one of prior restraint).

KOB-TV's success at its First Amendment defense regarding the sealing order necessarily has dispositive effects on Plaintiffs' claims against KOB-TV.

## II.     Invasion of Privacy

New Mexico recognizes the tort of invasion of privacy. Andrews v. Stallings, 119 N.M. 478 (Ct.App. 1995) (citing McNutt v. New Mexico State Tribune Co., 88 N.M. 162, 165 167

---

[6] Based on the copy of the broadcast transcript provided by KOB-TV, it did not reveal the addresses themselves or disclose any information bearing on the identities of any of the family members, which is consistent with Plaintiffs' allegations.

(N.M.App. 1975), cert denied, 88 N.M. 318 (1975). The elements of this tort are public disclosure of private facts, disclosure which would be objectionable to a reasonable person, and a lack of legitimate public interest in the information. Fernandez-Wells v. Beauvais, 127 N.M. 487, 489 (N.M.App. 1999) (citing Restatement (Second) of Torts § 652D).

KOB-TV argues that Plaintiffs have not met any of the three elements. KOB-TV's strongest arguments are made with regard to the first and third elements. With regard to the first element, publication of names and identities cannot be considered "private facts." See, McNutt, 88 N.M.162 (publication of names and address of police officers involved in a gun fight with members of Black Beret was not actionable as a "public disclosure of private facts"). There is little in the way of case law on the First Amendment and disclosure regarding undercover officers.[7] However, the Court finds no legal rationale which would change the standard First Amendment analysis on whether certain facts are "private." Id. at 162 ("it is the usual practice in newspaper accounts to identify persons by giving their names and addresses so as to avoid confusion because many individuals have identical names").

Regardless of whether the second element is satisfied, the Court's previous finding regarding KOB-TV's First Amendment defense eliminates the possibility of Plaintiffs' meeting the third element -- lack of legitimate public interest in the information.  As the New Mexico Court of Appeals in McNutt noted:

---

[7] Many of the cases cited by KOB-TV were from other state courts and did not involve undercover officers -- or police officers for that matter.  However, KOB-TV did cite to at least one which involved an undercover detective.  In Cassidy v. American Broadcasting Companies, Inc., 377 N.E.2d 126, (Ill.App. 1978), a broadcasting company filmed an undercover agent viewing a "deluxe" lingerie show.  The court found that the crew's filming of that event was not an invasion of the officer's right to privacy because of his status as a public official, and because the report was to inform the public regarding his activities in the discharge of his public duties.

> The right of privacy is not unqualified. . . . . One of the key qualifications to the right is where the individual's right of privacy conflicts with the First Amendment's freedom of the press. In such a circumstance, the individual's right of privacy must yield to the greater public interest in the dissemination of newsworthy material [citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)]. Furthermore, it makes no difference whether the person involved is a public official, a public figure or a private individual. Neither is a characterization of the subject matter of the publication as political, public or private concern of determinitive [sic] import.

The definition of "newsworthy" encompasses "relatively current events such as in common experience are likely to be of public interest" and "current criminal activities," which would include the pending APD investigation into allegations of criminal wrongdoing against Plaintiffs. McNutt, 88 N.M. at 167.

In their response, Plaintiffs ignore the specific First Amendment issues raised by KOB-TV as well as the separate elements of the claims they have asserted. Instead, Plaintiffs insist that KOB-TV's awareness of the order would have made any broadcast of Plaintiffs' names and identities a violation of that order -- without offering any legal authority on point. Plaintiffs also distinguish the case law relied on by KOB-TV from this case by pointing out that some of those cases did not involve undercover officers, which was previously addressed.

Thus, Plaintiffs' invasion of privacy claim brings the analysis back to KOB-TV's successful reliance on the First Amendment as a defense and precludes Plaintiffs' claim for invasion of privacy against KOB-TV. See Andrews, 119 N.M. at 484 (where public figures are involved in issues of public concern, the Constitution contemplates a bias in favor of free speech); Time, Inc. v. Hill, 385 U.S. 374, 387-88 (1967) (constitutional protections for speech and press preclude liability for the false reporting of matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the

11

truth); McNutt, 88 N.M. at 167 (recognizing that Time, Inc. v. Hill "extended the privilege created in [New York Times v. Sullivan] to encompass the tort of invasion of privacy").

KOB-TV also addresses what seems to be a variation of the tort of invasion of privacy alluded to in Plaintiffs' First Amended Complaint – intrusion upon seclusion. ¶ 66. This tort involves an invasion of the plaintiff's "private" space or solitude, such as opening a person's private and personal mail, searching his safe or his wallet, or examining his private bank account. See, Restatement (Second) of Torts § 652B, cmt. b (citing examples). It is highly questionable whether the alleged intrusion resulting from KOB-TV's broadcast of Plaintiffs' names and footage of their homes can be characterized as a prying into another's private affairs, which is the hallmark of such claims. Further, the constitutional protection afforded the press would outweigh the type of disclosures made in KOB-TV's broadcast.

Therefore, Plaintiffs' invasion of privacy claims against KOB-TV are precluded by KOB-TV's assertion of a First Amendment defense, and these claims are dismissed with prejudice.

## II. Intentional Infliction of Emotional Distress (IIED)

Plaintiffs cannot sustain an IIED claim against KOB-TV for the same reason that their invasion of privacy claims fail: KOB-TV's First Amendment right to publish the information they obtained from someone at APD. Cmp. Andrews, 119 N.M. at 491 (warning against using IIED claims "to make an end-run around the obstacles posed by defamation law's harm to reputation element").

In order to prevail in a claim for intentional infliction of emotional distress, a plaintiff must prove he suffered severe emotional distress as a result of defendant's extreme and outrageous conduct, and that such conduct was intentional or reckless. Newberry v. Allied Stores, Inc., 108

N.M. 424, 426 (1989); 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981). Even without the constitutional bar to Plaintiffs' claim, Plaintiffs' allegations do not meet the contours of an IIED claim. "As a general proposition, accurate publication of newsworthy events does not give rise to a cause of action for intentional infliction of emotional distress." Andrews, 119 N.M. at 492. Here, Plaintiffs do not allege that the information in the broadcast was not accurate, nor do they present any facts which would suggest that the information was relayed with malice under the standard set out in New York Times v. Sullivan. Further, they offer no facts or evidence to show that KOB-TV's conduct could reasonably be regarded as extreme and outrageous. See Salazar v. Furr's, Inc., 629 F.Supp. 1403, 1411 (D.N.M.,1986) (court determines "in the first instance," whether defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and issue becomes one for the jury only "where reasonable minds may differ").

## Conclusion

In sum, KOB-TV's reporting information about a pending investigation involving alleged criminal wrongdoing was protected by the First Amendment. The state court sealing order, whether or not KOB-TVwas aware of the order, did not apply to KOB-TV because application to the news media would have constituted prior restraint. KOB-TV's First Amendment defense precludes Plaintiffs' claims of invasion of privacy and intentional infliction of emotional distress. In addition, Plaintiffs' allegations do not satisfy the elements of either of the state tort claims alleged against KOB-TV.

**THEREFORE,**

**IT IS ORDERED** that the Motion to Dismiss filed by KOB-TV **(Doc. 6)** is hereby GRANTED,  Plaintiffs' claims asserted against KOB-TV are hereby DISMISSED WITH

PREJUDICE [8] and KOB-TV is hereby DISMISSED as a party Defendant in this proceeding.

_____
UNITED STATES DISTRICT JUDGE

---

[8] As mentioned previously, Plaintiffs' remaining claims in Counts III, IV and V are asserted against the City of Albuquerque only.